IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**MARKCUS J. AARON, #240582**                                                    **PLAINTIFF**

v.                                                         CIVIL NO. 3:23-cv-3084-HTW-LGI

**HINDS COUNTY**                                                                   **DEFENDANT**

## REPORT AND RECOMMENDATION

This case is before the undersigned on Defendant Hinds County's Motion for Summary Judgment [45]. For the reasons below, the undersigned recommends that Defendant's Motion be granted.

### I.  BACKGROUND

Pro se Plaintiff Markcus J. Aaron ("Plaintiff") is presently an inmate of the Mississippi Department of Corrections. Plaintiff is proceeding *in forma pauperis*, subject to the Prison Litigation Reform Act ("PLRA"), and he brings this suit under 42 U.S.C. § 1983. *See* Compl. [1]; Order [5]. Plaintiff's claims arise from his prior confinement at the Hinds County Detention Center ("HCDC") in Raymond, Mississippi.

Plaintiff's detention with Hinds County began when he was arrested on February 11, 2019, and ended on October 12, 2022, when he became an inmate of the Mississippi Department of Corrections ("MDOC"). Plaintiff is serving a 25-year sentence for second-degree murder, and he is now incarcerated at the Central Mississippi Correctional Facility in Pearl, Mississippi.

On May 14, 2025, the undersigned conducted an Omnibus Hearing under the

authority of *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), and its progeny. At the hearing, Defendant's counsel provided Plaintiff with his Hinds County inmate file as well as records of his medical history and medication administration while in the custody of Hinds County. Tr. [45-1] at 24:23–25; 25:1–4. The undersigned permitted the parties to conduct additional discovery and directed that it be completed by August 25, 2025. *See* Order [39] at 4.

On September 25, 2025, Defendant Hinds County moved for summary judgment. Plaintiff has not responded.

A. <u>Plaintiff's allegations</u>

Plaintiff claims he received inadequate medical treatment while housed at HCDC in violation of his constitutional rights. Plaintiff testified that he experienced vomiting, stomach pain, weakness, rectal bleeding, and an inability to eat, but his requests for medical attention were largely ignored. Plaintiff testified that he was taken to Baptist Hospital on May 7, 2019, where Dr. Gregory Fiser diagnosed him with ulcerative colitis. Tr. [45-1] at 12:2–3, 17–24. Plaintiff testified that jail personnel provided him with medication in the form of large fiber pills that he believes were not prescribed by the G.I. doctor. Tr. [45-1] at 13:6–15.

Plaintiff also testified that he was taken to Merit Health Hospital on October 20, 2020, and prescribed several medications that he did not receive when he returned to HCDC. Tr. [45-1] at 13:16–25; 14:1–13. Instead, jail personnel continued to provide him with the large fiber pills. Tr. [45-1] at 14:7–11. Plaintiff later testified that he received acid reflux medicine and that one time he received

steroids while housed at HCDC. Tr. [45-1] at 15:19–25; 16:1–5. Plaintiff also testified that medical records from HCDC regarding his ulcerative colitis were not provided to MDOC medical personnel.[1] Tr. [45-1] at 14:24–25; 15:1–14. Plaintiff testified that he suffered mentally from the inadequate medical care provided at HCDC. Tr. [45-1] at 20:17–21. Plaintiff seeks monetary damages.

B. <u>Defendant's Motion for Summary Judgment</u>

Defendant Hinds County asserts that it is entitled to summary judgment because Plaintiff fails to show that Hinds County acted with deliberate indifference to his serious medical needs. Defendant relies on Plaintiff's medical records to argue there was no refusal to treat Plaintiff or any similar conduct that would evince a wanton disregard for Plaintiff's medical needs.

Defendant next argues that Plaintiff fails to establish municipal liability because he fails to assert that a policy, practice, or custom was the moving force behind any alleged constitutional violation. Lastly, Defendant argues Plaintiff fails to satisfy the physical injury requirement to recover for mental damages under the PLRA. As exhibits, Defendant submits the Omnibus Hearing Transcript [45-1] and Plaintiff's medical records during his detention with Hinds County. Attach. [48] (conventionally filed).

Plaintiff has not responded to Defendant's Motion [45] and the time for doing so has expired.

---

[1] On June 24, 2024, Plaintiff filed copies of his medical records from both hospitalizations that occurred during his detention at HCDC (Baptist Hospital records from May 17, 2019, and Merit Health Hospital records from October 20, 2020). *See* Pl.'s Attachment [14], [14-2].

## II.  ANALYSIS

A.  <u>Summary Judgment Standard</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020) (citation omitted).  The Court construes "all facts and inferences" in the light most favorable to the non-moving party, *see Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010), "but conclusional allegations and unsubstantiated assertions may not be relied on as evidence by the nonmoving party." *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion[ ] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Instead, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex Corp.*, 477 U.S. at 325).

These same summary-judgment rules apply to pro se parties. While the Court will liberally construe pro se arguments, a pro se non-movant must offer evidence showing a genuine issue of material fact to defeat a motion for summary judgment. *Baughman v. Seale*, 761 F. App'x 371, 378 (5th Cir. 2019).

B. <u>Deliberate Indifference Standard</u>

Initially, the undersigned notes that Plaintiff's claims arise under the Fourteenth Amendment because he was a pretrial detainee during his detention at the HCDC, however the "standard is the same as that for a [convicted] prisoner under the Eighth Amendment." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 727 (5th Cir. 2020) (citation omitted).[2] "Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Crim. Just., Institutional Div.*, 91 F. App'x 963, 964 (5th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). To establish deliberate indifference "(1) the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and (2) he must also draw the inference." *Williams v. Hampton*, 797 F.3d 276, 281 (5th Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

"Deliberate indifference is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quotation omitted). A plaintiff must

---

[2] "A pretrial detainee may prove a constitutional violation either by demonstrating an unconstitutional condition of confinement or by demonstrating an unconstitutional episodic act or omission." *Cadena*, 946 F.3d at 727.

provide evidence showing prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Guillot v. Russell*, 59 F.4th 743, 755–56 (5th Cir. 2023) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). "Mere disagreement with medical judgments or treatment" is insufficient to meet the deliberate indifference standard. *Davis v. Lumpkin*, 35 F.4th 958, 963 (5th Cir. 2022) (citation omitted). Likewise, "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice" fail to meet the deliberate indifference standard. *Id.* (citing *Gobert*, 463 F.3d at 346). Finally, a "[d]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference that results in substantial harm." *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (emphasis in original, internal brackets omitted)(quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993)).

C. Discussion

Defendant maintains that Plaintiff's allegations do not establish municipal liability or amount to deliberate indifference as required to obtain relief under § 1983. Defendant also argues that Plaintiff's request for damages based on mental injuries is barred by the PLRA. The undersigned agrees.

1. Plaintiff fails to state a claim for municipal liability

A municipality may be held liable under § 1983 when its official policy or customs violate the Constitution. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978). But "a municipality cannot be held liable under

§ 1983 on a *respondeat superior* theory." *Id.* at 691. Thus, to establish a § 1983 claim against Hinds County, Plaintiff must prove (1) the existence of a policymaker, and (2) an official policy or custom (3) which is the moving force behind a constitutional violation. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *see, e.g.*, *Cadena*, 946 F.3d at 727–29 (citation omitted) (finding pretrial detainee failed to establish municipal liability under episodic-act theory regarding medical care).

Plaintiff points to no official policy or custom here, nor does he explain how any such policy or custom caused the alleged constitutional violation. Plaintiff fails to raise a genuine issue of material fact for *Monell* liability, and Hinds County is entitled to judgment as a matter of law. *See, e.g.*, *Willard v. Hearn*, No. 1:19-CV-908-RPM, 2022 WL 4180943, at *4 (S.D. Miss. Aug. 25, 2022) (granting summary judgment to Harrison County because plaintiff identified no policy, practice, or custom that resulted in a violation of his constitutional rights).

2. <u>Plaintiff fails to meet the deliberate indifference standard</u>

Plaintiff complains that the medical care provided for his ulcerative colitis while detained by Hinds County was constitutionally inadequate. Defendant argues Plaintiff's medical records show there was no deliberate indifference to Plaintiff's medical needs during his detention.

Plaintiff's medical records from HCDC total 790 pages and detail many visits with medical personnel for various ailments and complaints, including consistent appointments for mental health care, monthly lab-work and weight-checks, along

7

with outside consults, procedures, and treatment by medical doctors that are gastro-intestinal specialists, and the prescription or administration of at least twenty medications. *See generally* [48] and Attachments [48-1 to 48-12].

Starting with Plaintiff intake screening at HCDC on February 11, 2019, the records note that Plaintiff reported, prior to his arrest, "he was trying to get a colonoscopy due to rectal bleeding." [48] at 3. Because of this statement, the "tasks log" section of Plaintiff's records reflect that an appointment with a doctor or nurse practitioner was scheduled for February 13, 2019. [48-7] at 12–14, 25. In the "medical sick calls" section of Plaintiff's records, dated February 13, 2019, it notes Plaintiff's complaint of rectal bleeding and states the "plan" is to obtain records from Plaintiff's visit to University of Mississippi Medical Center prior to his arrest, to conduct lab-work, to obtain a stool sample, and to prescribe omeprazole. [48-1] at 49. This section also states it educated Plaintiff on the importance of obtaining the stool sample and how to do so in his situation. *Id.*

The records reflect that on March 13, 2019, an attempt was made to schedule an appointment for Plaintiff with an outside G.I. specialist, and on March 19, 2019, a call for a consult with the G.I. specialist occurred. [48-9] at 33; [48-11] at 50. There are records dated March 25, 2019, noting Plaintiff was seen for "intermittent" stomach pain, recorded as a 5 on a pain scale of 1 to 10, that felt better with a bowel movement. [48] at 50.

On April 4, 2019, there is a notation that rounds were made in the segregation unit, and Plaintiff denied any discomfort or pain. [48-1] at 15. The

records also note rounds on May 2, 2019, when Plaintiff was outside for recreation or yard call. [48-1] at 18.

On May 5, 2019, the records show a consult with a G.I. specialist and that Plaintiff was moved to the medical area of HCDC for preparation and observation prior to his May 7, 2019 colonoscopy at Baptist Hospital. [48-7] at 26; [48] at 52–53. The records also note Plaintiff's return to the HCDC after the procedure and that someone in medical spoke over the phone with the doctor about the procedure results. [48-9] at 34.

In 2019, in total, there are notations for medical interactions with Plaintiff on 14 separate occasions for complaints of stomach pain, dental pain, and a headache, along with visits for mental health care and treatment for lacerations, abrasions, and bruising after a physical altercation.[3] In 2020, there are also numerous records related to Plaintiff's interactions with medical personnel.[4] The records also contain several pages of medication documentation detailing the prescriptions or over-the-counter medications provided to Plaintiff for his complaints and dates and times of administration to Plaintiff.

Relevant to Plaintiff's ulcerative colitis in 2020, there are records for March 18 and March 24, noting Plaintiff's belief that some medication is affecting his

---

[3] Intake screening on February 11, 2019, [48] at 3; treatment after physical altercation on March 18, 2019, *id*. at 14; stomach pain on March 25, 2019, *id*. at 50; mental health care on April 10, 2019, *id*. at 14; dental pain on April 24, 2019, *id*. at 51–52; colonoscopy prep and procedure on May 6 and 7, *id*. at 52–53; headache on May 8, 2019, *id*. at 53–54; dental pain on May 23 and September 22, 24, *id*. at 54–58; and mental health care on August 1, October 31, and November 12, *id*. at 16–22.

[4] In addition to the interactions discussed in the next paragraph, the records for 2020 show Plaintiff's annual physical health assessment on February 6, [48] at 22; dental pain on February 11, *id*. at 58–59; follow-up on February 13, *id*. at 25; and dental pain on May 24, *id*. at 60.

condition, and that he wants to take Metamucil caplets over the Miralax powder mixed with liquid for his consumption. [48-7] at 56–57. On May 12 and August 13, 2020, the records note Plaintiff's ulcerative colitis condition and state that he reports a good appetite, and he is compliant with his medication. [48] at 26, 28.

The records next reflect that on October 15, 2020, Plaintiff reported that he had been experiencing nausea and vomiting for one week. [48] at 61–62. Five days later, on October 20, Plaintiff is seen by a G.I. specialist at the Merit Health Hospital. There is also a notation that during this time-period, on October 18, a nurse practitioner issued a "special needs communication" for Plaintiff to receive more fruit, soup, and pudding with each meal. [48-1] at 10. Lastly, the is a record dated November 11, 2020, noting that Plaintiff has a good appetite, and he is compliant with his medication, and "Plaintiff reported his UC was acting up badly causing weight loss, but he states that he is much better." [48] at 31.

As for Plaintiff's specific complaint that he was not provided medication prescribed by a G.I. doctor after his October 20, 2020 hospital visit, Plaintiff's medical records tell a different story. Plaintiff testified that the "discharge meds" he was prescribed and not given were "prednisone tablet, 60 milligrams; folic acid tablet; ferrous sulfate tablet; and Asacol delayed-release." Tr. [45-1] at 13:23–25.

Plaintiff's medical records reflect that he was prescribed prednisone (a steroid) after his hospital visit, from October 22, 2020 to December 2, 2020. [48-2] at 26-29.[5] The records also show that Plaintiff was prescribed mesalamine, the

---

[5] Plaintiff's medical records also show that earlier in the year, from April 15, 2020 to May 27, 2020, Plaintiff was also prescribed prednisone. [48-2] at 6–13.

10

active drug in Asacol delayed-release, an anti-inflammatory medication used to treat ulcerative colitis, from April 15, 2020 to June 15, 2020, and during the relevant time period from October 18, 2020 to November 16, 2020, and again from April 28, 2022 to June 29, 2022. [48-3] at 1; [48-2] at 5, 15, 23, 59. Plaintiff's records also show that he was prescribed metronidazole, a medication used to treat ulcerative colitis, in 2019, and he was also prescribed this medication during the relevant time period, from October 18, 2020 to October 28, 2020. [48-2] at 24; [48] at 32, 61, 73.

As for folic acid (vitamin B-9) and ferrous sulfate (iron supplement), both are commonly taken for anemia or an iron deficiency. In any event, Plaintiff's medical records show that while housed at HCDC, Plaintiff was prescribed ferrous sulfate for one-year and seven-months, running from August 13, 2019 to March 30, 2022. [48-2] at 10, 18–19, 29–30, 33, 45, 51; [48] at 51, 58, 64. Defendants do not point out, nor did the undersigned locate, a specific reference to folic acid or Vitamin B-9 in the twenty different medications listed in Plaintiff's medical records.

As detailed above, Plaintiff's medical records do not show a refusal to treat Plaintiff's complaints or similar conduct by Defendant showing a wanton disregard for Plaintiff's medical needs. Plaintiff's records show he was regularly seen for physical complaints, including his stomach issues, and for chronic care related to his mental health. And the records contain pages of documentation related to the medications prescribed and administered to Plaintiff during his detention. "Medical records of sick calls, examinations, diagnoses, and medications may rebut an

11

inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (affirming district court's dismissal of inmate's deliberate indifference claims as frivolous); *Harris v. Epps*, 523 F. App'x 275, 275 (5th Cir. 2013) (affirming summary judgment where prisoner's medical records showed he received ongoing medical treatment); *Corring v. Pearl River Cnty.*, 550 F. App'x 204, 205 (5th Cir. 2013) (affirming summary judgment where prisoner's records show at most a disagreement with treatment regimen or that medical provider was arguably negligent or committed malpractice). Plaintiff provides no response to Defendant's Motion for Summary Judgment, nor does he address the details of his medical records.

Plaintiff may not agree with the wait time before his 2019 colonoscopy or with the medications he was prescribed or administered after his discharge from the hospital in 2020, but "[m]ere disagreement with medical judgments or treatment" is insufficient to meet the deliberate indifference standard. *Davis*, 35 F.4th at 963 (citation omitted). Likewise, "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice" fail to meet the deliberate indifference standard. *Id.* (citing *Gobert*, 463 F.3d at 346). The undersigned finds that Plaintiff offers no evidence showing deliberate indifference to a serious medical need as required for a claim of constitutionally-inadequate medical care under § 1983.

    3. <u>Plaintiff is not entitled to recovery solely for mental damages</u>

Under the PLRA, Plaintiff "may not recover for emotional or mental damages without a showing of a specific physical injury." *Herman v. Holiday*, 238 F.3d 660,

665 (5th Cir. 2001). Defendant argues that Plaintiff admits he suffered no physical injury as a result of the alleged conduct of Hinds County. The relevant section of the PLRA provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).

Plaintiff testified that Hinds County did not physically harm him; instead, Plaintiff claims his injuries were mental. Tr. [45-1] at 20:20–21 ("They didn't physically harm me, but they did mentally."); 21:6–8 ("So they didn't physically harm me, but I can say it did play with my mind mentally, though."). Plaintiff is not claiming a physical injury from the alleged inadequate medical care, thus, the PLRA bars his recovery of mental and emotional damages. *See Herman*, 238 F.3d at 665 ("No adequate showing of physical injury has been made . . . which would permit recovery of either emotional or mental damages."); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (finding inmate's bruised ear did not qualify as sufficient physical injury under § 1997e(e)).

In summary, Plaintiff's allegations fail to meet the "extremely high" deliberate indifference standard required to obtain relief under § 1983. *Gobert*, 463 F.3d at 346. Plaintiff also fails to raise a genuine issue of material fact for *Monell* liability. The undersigned further finds that Plaintiff fails to allege a specific physical injury by Hinds County as required for recovery of mental and emotional damages under the PLRA. Defendant Hinds County is entitled to summary

judgment.

## III.  RECOMMENDATION

For these reasons, the undersigned recommends that Defendant Hinds County's Motion for Summary Judgment [45] be GRANTED.

## IV.  NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party may serve and file written objections to the recommendations, with a copy to the United States District Judge, the Magistrate Judge, and the opposing party, within fourteen days after being served a copy of this recommendation.  Failure to timely file written objections to proposed findings, conclusions, and recommendations contained within this report and recommendation will bar that party from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court, except on the grounds of plain error.  *See* 28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 248 (5th Cir. 2017).

Respectfully submitted, this, the 31st day of December, 2025.

s/ *LaKeysha Greer Isaac*
UNITED STATES MAGISTRATE JUDGE